IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE O.,[1]

    Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 3:18-cv-0113-MC

OPINION AND ORDER

MCSHANE, Judge:

    Plaintiff Stephanie O. brings this action for judicial review of the Commissioner's decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). This court has jurisdiction under 42 U.S.C. § 405(g).

    On September 25, 2014, Plaintiff applied for DIB and SSI, alleging disability as of August 15, 2009. Tr. 20.[2] Plaintiff requested an administrative hearing after her applications were denied initially and on reconsideration. *Id.* On September 15, 2016, a hearing was held before Administrative Law Judge ("ALJ") John Michaelsen. Tr. 39-63. At the hearing, Plaintiff amended her alleged disability onset date to April 1, 2012. Tr. 47-48. In a written decision dated

---

[1] In the interest of privacy, this Opinion uses only the first name and initial of the last name of the non-governmental party in this case.

[2] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner (ECF No. 11).

1 – OPINION AND ORDER

December 2, 2016, the ALJ determined Plaintiff was not disabled under the Act from April 1, 2012, through the date of the ALJ's decision. Tr. 17-32. Because the ALJ's decision is based on the proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, I review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720–21 (9th Cir. 1996)).

## DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. *Id.* At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work

after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. *Id.* If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

Born in 1971, Plaintiff was 40 years old on the alleged disability onset date and 45 years old on the date of her hearing. Tr. 30. She has a high school education. Tr. 30. Plaintiff previously worked as a telephone information clerk and data entry clerk. *Id.* She alleged disability due to anxiety, major depression, headaches, lumbago/sciatica with radiculopathy, bilateral knee joint pain and swelling, Baker's cysts, livedo reticularis, spider veins, rosacea, and syncope with tachycardia. Tr. 268.

The ALJ determined Plaintiff had the following severe impairments: mild degenerative disc disease, mild arthritis, borderline obesity, a schizoaffective disorder, an anxiety disorder, and a personality disorder. Tr. 23. The ALJ resolved that Plaintiff retained the RFC to perform sedentary work, except she was limited to no more than frequent balancing and occasional crawling, crouching, kneeling, or climbing. Tr. 25. The ALJ further found Plaintiff would require regular, periodic reminders from her supervisor in order to stay on task, and could perform simple, repetitive, and routine tasks requiring no more than brief, superficial contact with the general public. *Id.* The ALJ determined Plaintiff was unable to return to her past relevant work; however, the ALJ found Plaintiff could perform other jobs in the national economy, such as table worker, hand mounter, and document specialist. Tr. 30-31. Therefore, the ALJ concluded Plaintiff was not disabled under the Act. Tr. 31-32.

Plaintiff argues the ALJ erred by: (1) failing to find Baker's cysts a severe impairment at step two; (2) rejecting multiple medical opinions; and (3) failing to identify a significant number of jobs in the economy that Plaintiff could perform. I address each argument in turn.

I. **Step Two**

Plaintiff contends the ALJ erred by failing to find Baker's cysts a severe impairment at step two of the sequential analysis. The step-two inquiry is a *de minimis* screening device used to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. 147, 153-54 (1987). The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 404.1512. An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)). However, if an ALJ fails to properly identify a severe impairment at step two, but nonetheless considers the erroneously omitted impairment at subsequent steps of the sequential evaluation process, the step two error is harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Here, the ALJ's failure to find Plaintiff's Baker's cysts a severe impairment at step two was harmless. The ALJ found that notwithstanding a February 2014 MRI demonstrating Plaintiff had cysts in both of her knees, subsequent examination with Dr. Diaz in July 2015 indicated Plaintiff had joint line tenderness in her knees, but no Baker's cysts were felt by the doctor. Tr. 26, 316, 571. Dr Diaz diagnosed "[a]thralgia of both knees" and referred Plaintiff to an orthopedic specialist. Tr. 571. Notably, the ALJ limited Plaintiff to sedentary work, in part, because of her "knee arthritis." Tr. 26. Thus, even assuming the ALJ erred at step two by failing to expressly find Baker's cysts, as opposed to knee arthritis, a severe impairment, the ALJ's

subsequent consideration of Plaintiff's knee limitations rendered that error harmless. *See Lewis*, 498 F.3d at 911.

## II. Medical Opinion Evidence

Plaintiff argues the ALJ erred by giving some weight to the medical opinion of examining psychologist Elisa Rudd, Psy.D., and by giving little weight to the joint medical statement of treating nurse practitioner Ruth Saunders, DNP, FNP, and non-treating, non-examining physician Wayne Englander, M.D.

### A. Rudd Opinion

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If, however, the opinion is contradicted by that of another doctor, then the ALJ need only provide "specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ may satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). The ALJ must, in other words, "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citation and quotation marks omitted). Because Dr. Rudd's opinion was contradicted by the opinions of consultative psychologists Joshua Boyd, Psy.D., and Ben Kessler Psy.D., the ALJ was required to provide specific and legitimate reasons to discount Dr. Rudd's opinion. Tr. 81-89, 96-101, 367-75.

Dr. Rudd performed a psychological evaluation of Plaintiff in September 2014. Tr. 367-75. Dr. Rudd diagnosed Plaintiff with posttraumatic stress disorder ("PTSD"); schizoaffective

disorder, depressive type; personality disorder, with depressive, paranoid, and avoidant features, and gambling disorder in sustained remission. Tr. 373. Dr. Rudd opined that "[b]ecause of traumatic stress and resulting suspicion, fear and avoidance of others, psychotic paranoia and both auditory and visual hallucinations, depression, and her characterologically-based interpersonal difficulties," Plaintiff would struggle to cope with the demands of a competitive work environment, interacting with co-workers or customers, managing her interpersonal anxiety, and maintaining the stamina to complete a regular workday or work week. Tr. 374.

Based on Plaintiff's demonstration of mild cognitive dysfunction in visuospatial and memory skills on testing, and her "significant impairments in concentration and focus due to the interference posed by her intrusive flashbacks, hypervigilance, and auditory and visual hallucinations," Dr. Rudd further opined that Plaintiff was limited to understanding and remembering simple instructions, performing simple and repetitive tasks, and would still need constant supervision with frequent reminders and redirection to help her stay on task. *Id.* Dr. Rudd stated that even with "intensive psychotherapy, ongoing psychiatric treatment and medication management, case management, and interpersonal skills training," it would take "several years to see modest stabilization and improvement to [Plaintiff's] functioning." *Id.* Finally, Dr. Rudd opined that Plaintiff's symptoms were so severe that she would be incapable of managing any benefits awarded to her. Tr. 375.

As a preliminary matter, the ALJ accepted many of the limitations put forward by Dr. Rudd. Consistent with Dr. Rudd's opinion concerning Plaintiff's limitations in cognitive and social functioning, the RFC limits Plaintiff to "simple, repetitive, routine tasks requiring no more than brief, superficial contact with the general public," and "regular, periodic reminders from her supervisor to stay on task." Tr. 25, 374. The ALJ is responsible for resolving conflicts in the

medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). Thus, the ALJ rejected Dr. Rudd's opinion to the extent that the psychologist opined Plaintiff would be unable to complete a regular workday or work week and would struggle interacting with coworkers. The ALJ, however, gave specific and legitimate reasons for rejecting those limitations. Tr. 28.

As Plaintiff accurately notes, the fact that Dr. Rudd saw Plaintiff on only one occasion is not, standing alone, a legitimate basis for rejecting the doctor's assessed limitations. An ALJ, however, may properly consider the nature and extent of the relationship between a medical source and the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Such consideration is especially valid when, as is the case here, a one-time examining source renders an opinion that is out of proportion with the entirety of the record. As found by the ALJ, Dr. Rudd's disabling opinion is inconsistent with Plaintiff's history of sporadic and minimal mental health treatment for her anxiety and depression. Tr. 28.[3] The ALJ's reliance on Plaintiff's lack of mental health treatment was a specific and legitimate reason to discount Dr. Rudd's opinion. *See Batson*, 359

---

[3] Plaintiff's treatment history does not reflect the degree of limitations opined by Dr. Rudd. For example, in April 2011, Plaintiff informed Dr. Henriques that Prozac effectively treated her symptoms in the past, but she had not taken it for two years. Tr. 359. In July 2011, Plaintiff relayed that she had run out of Prozac for one month despite finding it was helping. Tr. 356. Plaintiff reported in June 2012 that she was experiencing increased depression due to not taking Prozac for one month. Tr. 354. In February 2013, Nurse Guzman noted that despite Plaintiff's report that she had taken her medications the night before, records indicated Plaintiff had not refilled her medications since June 2012. *Id.* In October 2013, Plaintiff requested a letter from her physician explaining her anxiety and depression had improved with medication. Tr. 345. In August 2014, Plaintiff requested an increase to her Prozac dose due to worsening symptoms. Tr. 341. Although Nurse Practitioner Higgins suggested Plaintiff consider counseling if the higher dose of Prozac was ineffective, there is no evidence that Plaintiff followed that suggestion—indicating simple medication management effectively treated her symptoms. *Id.* Notably, by August 2016, Plaintiff requested a decrease in her Prozac dose because her new kitten was helping with her mood. Tr. 578.

7 – OPINION AND ORDER

F.3d at 1195 ("An ALJ may discredit [medical] opinions that are . . . unsupported by the record as a whole or by objective medical findings.") (internal citations omitted).

Indeed, Dr. Rudd's assessed diagnoses and limitations appear to have been influenced heavily by Plaintiff's allegation that she felt "on edge and unsafe on a daily basis" due to "hearing voices since she was a child" and experiencing hallucinations of "someone wiggling her door handle or trying to get into her house . . . throughout her adult life." Tr. 370. Prior to her examination with Dr. Rudd, however, Plaintiff never reported that she was experiencing hallucinations, nor did she ever raise that concern afterwards. In fact, Plaintiff specifically denied hearing voices at her appointment with Dr. Henriques in April 2011. Tr. 359. Moreover, when asked by the ALJ at the hearing why she was unable to work, Plaintiff did not mention her mental health impairments, let alone her alleged hallucinations. Tr. 45-54. It was entirely reasonable for the ALJ to expect Plaintiff would have sought treatment for such serious symptoms—or at least raised those concerns at the administrative hearing—had she truly been experiencing hallucinations since childhood and throughout her entire adult life. "An ALJ cannot be required to believe every allegation of disabling [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to [the Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (finding an ALJ properly rejected doctor's limitations that were "so extreme as to be implausible and were not supported by any findings made by any doctor").

Finally, the ALJ found Dr. Rudd's opinion was inconsistent with Plaintiff's own reports concerning her capabilities. Tr. 27-28. Inconsistency between a claimant's reported activities and a medical opinion may be a specific and legitimate reason to discredit such an opinion. *See Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Dr.

Rudd's opinion concerning Plaintiff's inability to work with others is contradicted by Plaintiff's reports to her family advocate that she was wanted to work in customer service or "peer counseling." Tr. 233; *see also* Tr. 221 (Plaintiff identifying personal strengths as: outgoing, helpful, mothering, coping skills, de-escalates crisis, and effective communication). The ALJ further noted that Plaintiff's volunteer work for the church across the street from her apartment involved organizing the food pantry, as well as spending a couple of hours a week ordering supplies on the internet when someone at the church instructed her to. Tr. 27, 52-53. Plaintiff's volunteer activities indicate that she was capable of working alongside, and in coordination with, other people. Accordingly, the ALJ did not err by relying on Plaintiff's reported activities to discount Dr. Rudd's disabling limitations.

Because the ALJ's rejection of Dr. Rudd's opinion is supported by substantial evidence, the court need not address the remainder of Plaintiff's assertions of error concerning Dr. Rudd's opinion. Even assuming the ALJ erred, that error would have been harmless. *See Shultes v. Berryhill*, 758 F. App'x 589, 592 (9th Cir. 2018) (noting any error committed by the ALJ "in relying on additional reasons was harmless because the ALJ provided other specific and legitimate reasons to reject [the doctor]'s opinion.") (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).

### B. Saunders/Englander Opinion

Under the regulations applicable to Plaintiff's claim, Nurse Practitioner ("NP") Saunders is considered an "other" medical source. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); 20 C.F.R. § 404.1513 (effective Sept. 3, 2013 to Mar. 26, 2017); SSR 06-03p, *available at* 2006 WL 2329939. An ALJ may discount other source medical opinions by giving "reasons germane to each witness for doing so." *Molina*, 674 F.3d at 1111 (citation omitted). However, because Dr.

Englander's signature on the bottom of the form indicates the doctor concurred with Nurse Saunders' assessment, the opinion is also that of Dr. Englander. Tr. 564. As a non-treating, "non-examining physician," the ALJ could only reject Dr. Englander's opinion by reference to "specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted). Thus, the court will analyze the ALJ's rejection of the Saunders/Englander opinion under the "specific evidence" standard.

In August 2016, NP Saunders and Dr. Englander provided an assessment of Plaintiff's physical limitations on a form provided by Plaintiff's attorney. Tr. 560-64. They noted Plaintiff's diagnoses as "chronic low back pain with left sided sciatica, chronic bilateral knee pain with Baker's cysts, anxiety, and PTSD." Tr. 560. NP Saunders and Dr. Englander assessed that Plaintiff: could sit and stand/walk for less than two hours each in an eight-hour day; would need to elevate her legs 90 degrees every three hours for her Baker's cysts; would need to take 15-minute breaks every 45 minutes; could work a low-stress job that required no decision making; would miss more than two days of work a month due to "bad days"; and would experience symptoms severe enough to interfere with the level of attention and concentration needed to perform two-step tasks up to 50-percent of each day. Tr. 560-63. Finally, NP Saunders and Dr. Englander estimated that the assessed severity of Plaintiff's limitations had been present for at least three years. Tr. 560.

The ALJ's rejection of the Saunders/Englander opinion was based on specific evidence. The ALJ found the "objective evidence d[id] not show anything that could reasonably he expected to cause the degree of limitation suggested by N[P] Saunders and Dr. Englander and the treatment records[] fail[ed] to corroborate the degree of severity suggested in th[eir] report." Tr. 29. Regarding Plaintiff's back pain and sciatica, the ALJ noted that the imaging studies were

10 – OPINION AND ORDER

largely unremarkable. Tr. 26. Specifically, an October 2015 lumbar x-ray ordered and reviewed by NP Saunders was "normal" and showed only "mild degenerative changes." Tr. 577, 581. A subsequent MRI taken in August 2016 revealed minimal degenerative disc disease at L2-3 and L4-5 with no disc protrusions or evidence of spinal or foraminal stenosis. Tr. 26, 584. Concerning Plaintiff's knee impairments, the ALJ noted that "MRI scans of both knees performed in February 2014 revealed extensive, complex Baker's cysts in her right knee, and moderate complex Baker's cysts in her left knee." Tr. 26 (citing Tr. 316-17). The ALJ further noted that a July 2015 physical examination of Plaintiff's knees revealed tenderness to palpation and bilateral join line tenderness, but no evidence of Baker's cysts or effusions. Plaintiff was prescribed knee braces for support and a limited prescription of Tramadol and Aleve for pain control. Tr. 571, 573. The ALJ noted that in addition to the largely unremarkable imaging studies and prescribed course of conservative treatment, there was "no indication that surgery ha[d] been recommended for the claimant's spinal impairment or knee impairment." Tr. 26. Finally, the ALJ noted that the record did not document any "recommendation or instruction [for Plaintiff] to elevate her legs during the day." Tr. 26.

Further, after noting NP Saunders opined on the severity of Plaintiff's impairments going back at least three years, yet treated Plaintiff on only two occasions in October 2015, the ALJ reasonably found the opinion was based heavily on Plaintiff's subjective complaints. Tr. 26. For example, NP Saunders' basis for restricting Plaintiff to low-stress work was because Plaintiff "feels like she can cope with low stress work if she wasn't asked to make any decisions." Tr. 562. Consistent with Plaintiff's report to NP Saunders of "flares of pain and stress [two] days a week which would prevent her from working," the Saunders/Englander opinion stipulates that Plaintiff would miss more than two days of work a month due to "bad days." Tr. 563, 579. The

ALJ did not err in citing to the parallels between Plaintiff's subjective reports made to NP Saunders on August 24, 2016, and the limitations that were ultimately put forward by NP Saunders and Dr. Englander in the disability paperwork Plaintiff brought to that appointment. *Compare* Tr. 560-63, *with* Tr. 577-79.

Contrary to Plaintiff's assertion that the ALJ gave no reasons for disbelieving Plaintiff's subjective complaints, the ALJ gave several reasons for finding Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence." Tr. 25-27. Plaintiff, however, has not challenged the ALJ's reasons for rejecting her subjective symptom testimony. As such, the ALJ's rejection of the Saunders/Englander opinion for its overreliance on Plaintiff's inconsistent self-reporting will not be disturbed. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinion are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion.") (citations omitted). The ALJ did not err in giving little weight to the Saunders/Englander opinion.

### III. Significant Number of Jobs

Plaintiff argues the Commissioner failed to meet the step-five burden because the ALJ did not identify a significant number of jobs in national economy that Plaintiff was capable of performing. "While the claimant has the burden of proof at steps one through four, the burden of proof shifts to the [Commissioner] at step five to show that the claimant can do other kinds of work." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (citations omitted). To satisfy the step-five burden, the ALJ must determine that "specific jobs exist[] in substantial numbers in the national economy that [a] claimant can perform despite [her]

limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). However, there is "no bright-line rule" for determining the number of jobs that qualify as a "significant" or "substantial" number in the national or local economy. *Gutierrez*, 740 F.3d at 528-29.

The Commissioner concedes that Plaintiff's RFC restriction to simple, repetitive, and routine tasks is incompatible with the cognitive demands of the document specialist position the ALJ found Plaintiff capable of performing at step five. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (finding "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning"); DOT 249.587-018, *available at* 1991 WL 672349. Thus, argues Plaintiff, with only 17,408 positions available nationally, the table worker and hand mounter positions do not constitute a significant number of jobs existing in the national economy.

Plaintiff avers 17,408 jobs should be deemed insignificant because the Ninth Circuit in *Gutierrez* stated "the ALJ's finding that 25,000 national jobs is sufficient presents a close call." 740 F.3d at 529; *cf. Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) (holding 1,680 nationwide jobs insignificant). Plaintiff further argues this court should find 17,408 positions insignificant because the Northern District of California found 14,082 jobs insignificant, and this district has found 11,000 jobs insignificant. *Valencia v. Astrue*, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013); *Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-CV-01539-MA, 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016); *see also Lisa L. v. Comm'r of Soc. Sec.*, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (determining "11,084 jobs does not meet the significant number standard"); *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1220 (D. Or. 2019) (finding "7,400 jobs in the national economy does not constitute a significant number of jobs").

Just last year, however, Magistrate Judge Acosta found 17,046 jobs represents a significant number of jobs in the national economy. *Julie H. v. Comm'r, Soc. Sec. Admin.*, 2018 WL 7254706, at *5 (D. Or. Nov. 14, 2018), *report and recommendation adopted sub nom. Julie H. v. Berryhill*, 2019 WL 260852 (D. Or. Jan. 18, 2019) (agreeing with Judge Acosta's reasoning over the plaintiff's objection). As noted, there is no "bright-line rule for what constitutes a 'significant number' of jobs." *Gutierrez*, 740 F.3d at 528. Nevertheless, I find Judge Acosta's reasoning persuasive and see no basis on this record for deviating from his holding in *Julie H*. On balance, the court finds 17,408 jobs constitutes a significant number of jobs in the national economy. The Commissioner met the step-five burden.

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 28th day of June, 2019.

                                                   _s/Michael J. McShane_
                                                      Michael McShane
                                               United States District Judge